**STATE of Iowa, Appellant,**

v.

**Roland RASMUSSEN and Federal Prescription Service, Inc., Appellees.**

**No. 2–56203.**

Supreme Court of Iowa.

Dec. 19, 1973.

Richard C. Turner, Atty. Gen., and Fred M. Haskins, Asst. Atty. Gen., Des Moines, for appellant.

H. M. Coggeshall, Des Moines, and Geo. S. Leonard, Washington, D. C., for appellees.

Heard by MOORE, C. J., and MASON, RAWLINGS, REES and McCORMICK, JJ.

REES, Justice.

This matter had its genesis in the district court of Boone County, and arose by the filing by the Attorney General of the State of Iowa at the behest of the Iowa Board of Pharmacy Examiners of a petition seeking a permanent injunction against the defendants to enjoin them from filling prescriptions written by nonresident physicians not licensed by the Iowa authorities to prescribe controlled substances. Plaintiff moved for an adjudication of points of law raised by defendants, and after hearing trial court held the Iowa Uniform Controlled Substances Act was intended to regulate only intrastate transactions of controlled substances, and that registration under the Federal Comprehensive Drug Abuse Prevention and Control Act of 1970, constituted compliance with the Iowa Act. From such ruling, plaintiff has appealed. We affirm the trial court.

Defendant, Federal Prescription Service, Inc., is a pharmacy located at Madrid, and is registered under both federal and Iowa law to dispense controlled substances. Defendant Rasmussen is the manager of the pharmacy. Defendant pharmacy receives prescriptions by mail, fills them and returns them by mail to the person to whom the prescription was issued. Some of such prescriptions received by mail are written by nonresident physicians who are not registered to prescribe controlled substances by the Iowa issuing authority, the Iowa Board of Pharmacy Examiners. The central question in this case is whether the Iowa Uniform Controlled Substances Act (Chapter 204, The Code, 1973) should be construed so as to prohibit the filling by Iowa pharmacists of prescriptions written by nonresident physicians who are not registered by the Iowa authorities to prescribe controlled substances.

The parties are in agreement that the Iowa Act prohibits the filling by Iowa pharmacists of prescriptions written by physicians resident in Iowa who are not registered by the Iowa authorities to prescribe controlled substances.

We are asked to determine whether registration of a nonresident physician under the federal Act pertaining to drugs is sufficient to permit a resident pharmacist to fill a prescription of such nonresident physician, and whether the Iowa Uniform Controlled Substances Act is intended to regulate only intrastate transactions.

1. Section 204.308, The Code, 1973, provides in pertinent part:

"I. Except when dispensed directly by a practitioner, other than a pharmacy,

to an ultimate user, no controlled substance in schedule II may be dispensed without the written prescription of a practitioner.

"2. In emergency situations, as defined by rule of the board, schedule II drugs may be dispensed upon oral prescription of a practitioner, reduced promptly to writing and filled by the pharmacy. Prescriptions shall be retained in conformity with the requirements of section 204.306. No prescription for a schedule II substance may be refilled.

"3. Except when dispensed directly by a practitioner, other than a pharmacy, to an ultimate user, a controlled substance included in schedule III or IV, which is a prescription drug as determined under section 155.3, subsections 9 and 10, shall not be dispensed without a written or oral prescription of a practitioner. The prescription may not be filled or refilled more than six months after the date thereof or be refilled more than five times, unless renewed by the practitioner."

All of the controlled substances involved in the matter before us are defined in schedules II, III and IV of the Act.

" 'Dispense' means to deliver a controlled substance to an ultimate user or research subject by or pursuant to the lawful order of a practitioner, including the prescribing, administering, packaging, labeling, or compounding necessary to prepare the substance for that delivery." Section 204.101(9), The Code, 1973.

" 'Practitioner' means either:

"a. A physician, dentist, veterinarian, scientific investigator, or other person licensed, registered or otherwise permitted to distribute, dispense, conduct research with respect to or to administer a controlled substance in the course of professional practice or research in this state.

"b. A pharmacy, hospital or other institution licensed, registered, or otherwise permitted to distribute, dispense, conduct research with respect to or to administer a controlled substance in the course of professional practice or research in this state." Section 204.101(22), The Code, 1973.

The above definition of "practitioner" incorporated in the Iowa statute is the same definition for "practitioner" as that adopted by the National Conference of Commissioners on Uniform State Laws for the Official Draft of the Uniform Controlled Substances Act. See also definition of "practitioner" in 21 U.S.C.A., § 802(20).

II. Trial court found that the term "controlled substances", insofar as the term applies to the Iowa Controlled Substances Act, covers the same substances as are referred to in the United States Comprehensive Drug Abuse and Control Act of 1970. The trial court further found the Iowa Act permits Iowa pharmacists to dispense drugs only on prescription issued by Iowa licensed practitioners, whereas the federal Act permits Iowa pharmacists to dispense drugs on prescriptions issued by any practitioner licensed by the jurisdiction in which he practices. The court further found that the filling of prescriptions in Iowa of practitioners' licensed in other states constitutes interstate commerce.

In its legal conclusions the trial court determined that the requiring of all of the physicians in the United States and its territories to register in Iowa before they could prescribe drugs to Iowa residents and have their prescriptions filled by Iowa pharmacists would be unrealistic and an unreasonable burden on interstate commerce; that the State of Iowa has the right to regulate medical licensing within its borders, but does not have the right or jurisdiction to require a nonresident physician to register in Iowa; that the word "registered" as it appears in section 204.-101, The Code, 1973, refers to physicians registered under the United States Com-

prehensive Drug Abuse and Control Act, and that there is no conflict between the Iowa Act and the federal Act, as the Iowa Act is intended to regulate intrastate commerce only. The trial court, accordingly, ordered and adjudged that the Iowa Controlled Substances Act is intended to regulate intrastate transactions and the registration required by the United States Comprehensive Drug Abuse and Control Act of 1970 constitutes sufficient compliance by a nonresident practitioner to come within the purview, intent and purposes of the Iowa Act.

III. The Uniform Controlled Substances Act was promulgated by the National Conference of Commissioners on Uniform State Laws at its annual conference at St. Louis in August of 1970. The following is excerpted from the prefatory note to the Uniform Act then drafted by the Conference:

"This Uniform Act was drafted to achieve uniformity between the laws of the several States and those of the Federal government. It has been designed to complement the new Federal narcotic and dangerous drug legislation and provide an interlocking trellis of Federal and State law to enable government at all levels to control more effectively the drug abuse problem.

\*   \*   \*   \*   \*   \*

"Much of this major increase in drug use and abuse is attributable to the increased mobility of our citizens and their affluence. As modern American society becomes increasingly mobile, drugs clandestinely manufactured or illegally diverted from legitimate channels in one part of a State are easily transported for sale to another part of that State or even to another State. Nowhere is this mobility manifested with greater impact than in the legitimate pharmaceutical industry. The lines of distribution of the products of this major national industry cross in and out of a State innumerable times during the manufacturing or distri-

bution processes. To assure the continued free movement of controlled substances between States, while at the same time securing such States against drug diversion from legitimate sources, it becomes critical to approach not only the control of illicit and legitimate traffic in these substances at the national and international levels, but also to approach this problem at the State and local level on a uniform basis.

\*   \*   \*   \*   \*   \*

"Another objective of this Act is to establish a closed regulatory system for the legitimate handlers of controlled drugs in order better to prevent illicit drug diversion. This system will require that these individuals register with a designated State agency, maintain records, and make biennial inventories of all controlled drug stocks."

We must presume the Iowa legislature, in adopting the Uniform Controlled Substances Act, intended to come within the scheme of complementary federal-state control of the distribution of drugs and to create an "interlocking trellis" to assure effectiveness of the Act. We deem it entirely reasonable with such purpose that the Iowa legislature intended the Iowa Act to apply only to those resident practitioners conducting a business of filling prescriptions within this state, with control of the filling of prescriptions of out-of-state practitioners within the purview and contemplation of the federal Act. Such an interpretation of the Iowa Act would insure "the continued free movement of controlled substances between States, while at the same time securing such States against drug diversion from legitimate sources . . . ."

Plaintiff argues the prescribing of drugs is an integral part of the practice of medicine, and that when a prescription is filled in Iowa by a pharmacist that such filling of prescription constitutes the practice of medicine in Iowa and that the practice should not be permitted to circumvent the licensing requirements of Iowa while

carrying on a professional practice elsewhere.

Plaintiff further argues that the State "cannot be certain that physicians who are registered by other states are competent to prescribe drugs which are dispensed by pharmacies in Iowa", and therefore the State of Iowa should be able to prohibit all practitioners not registered with the Iowa authorities from filling prescriptions in Iowa.

■ In construing statutes, we are guided by the principle that where a statute is fairly subject to different constructions, one of which will render it constitutional and another unconstitutional or of doubtful constitutionality, the construction by which it will be upheld will be followed and adopted. State v. McGuire, 200 N.W.2d 832, 833 (Iowa 1972). If we were to adopt plaintiff's arguments in this connection, such a result would contravene both the supremacy and the commerce clauses of the United States Constitution.

We consider first the matter of preemption. In enacting the Federal Controlled Substances Act, Congress certainly did not intend to occupy and preempt the field of drug abuse control. 21 U.S.C.A. § 903 provides:

"No provision of this title shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, *unless there is a positive conflict between that provision of this title and that State law so that the two cannot consistently stand together."* (Emphasis supplied).

In Powers v. McCullough, 258 Iowa 738, 744, 140 N.W.2d 378, 382, this court said:

"The term 'direct conflict' means hostile encounter, contradictory, repugnant, so irreconcilably inconsistent, each with the other, as to make one actually inoperable in the face of the other. (Citations)."

■ The State argues there is no positive conflict between the federal Act and the Iowa Act, and that a nonresident physician can comply with the Iowa Act by simply registering with the Iowa authorities. We are unable to agree with the State's conclusion. To require all nonresident physicians to register in Iowa would be in practical effect negating the operation of the federal Act in this state. The following appears in the U.S. Code Congressional and Administrative News, 91st Cong., 2d Sess., 1970, Vol. 3, pp. 4571–4572, regarding P.L. 91–513, the Federal Controlled Substances Act:

"The bill is designed to improve the administration and regulation of the manufacturing, distribution, and dispensing of controlled substances by providing for a 'closed' system of drug distribution for legitimate handlers of such drugs. Such a closed system should significantly reduce the widespread diversion of these drugs out of legitimate channels into the illicit market, while at the same time providing the legitimate drug industry with a unified approach to narcotic and dangerous drug control."

We conclude the construction placed upon the Iowa statute by plaintiff would bring about a positive conflict in policy so that the two statutes could not consistently stand together.

■ IV. A holding by this court that the Iowa Act applies to all practitioners attempting to have their prescriptions filled in Iowa would present constitutional problems under the commerce clause of the United States Constitution, as such construction would impose unreasonable burdens on interstate commerce.

■ If a state statute, on its face, is for the protection of local economic benefit, such a statute is *per se* unconstitutional as it would place an undue burden on inter-

state commerce. In Pike v. Bruce Church, Inc., 397 U.S. 137, 145, 90 S.Ct. 844, 849, 25 L.Ed.2d 174 (1970), the court said:

> "For the Court has viewed with particular suspicion state statutes requiring business operations to be performed in the home State that could more efficiently be performed elsewhere. Even where the State is pursuing a clearly legitimate local interest, this particular burden on commerce has been declared to be virtually *per se* illegal. (Citations)."

■ The Iowa statute does not discriminate in its language between foreign practitioners and those registered in Iowa—all are required to register under the provisions of the Iowa Act in order to dispense drugs in Iowa. We do not regard such a provision as being *per se* unconstitutional.

■ However, if the effect of the law is to insulate in-state business against interstate competition (assuming for sake of argument no preemption problem), it is our responsibility to balance the purpose of the Act with its effect, and to assess the State's interest in adopting that particular statute in light of any reasonable alternatives available. In the absence of conflicting legislation by Congress, this court is the final arbiter of the competing demands of state and national interests. See Southern Pacific Co. v. Arizona, 325 U.S. 761, 769, 65 S.Ct. 1515, 1520, 89 L.Ed. 1915 (1945); Dean Milk Co. v. City of Madison, 340 U.S. 349, 71 S.Ct. 295, 95 L.Ed. 329.

■ We do not question the right of a state to regulate for the health and safety of its citizens. Breard v. Alexandria, 341 U.S. 622, 71 S.Ct. 920, 95 L.Ed. 1233 (1951); State ex rel. Turner v. Koscot Interplanetary, Inc., 191 N.W.2d 624 (Iowa 1971). The protection of the health and safety of the citizens of Iowa is the stated purpose of Iowa's Uniform Controlled Substances Act. Plaintiff therefore argues:

> "The State of Iowa has a legitimate health related interest in maintaining and enforcing its own standards for those who are permitted to prescribe controlled substances which are dispensed by pharmacies in Iowa."

Plaintiff cites and relies upon Huron Portland Cement Co. v. City of Detroit, 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960). In this case the City of Detroit imposed penalties on federally-licensed steamships for violation of city smoke-emission controls. Inspection of the boilers of steamships which were responsible for smoke emissions was part of the federal-licensing procedure also. *Huron* is cited by plaintiff for authority that federal licensing does not prevent a state from imposing stricter licensing requirements. In *Huron* (362 U.S. at 448, 80 S.Ct. at 818), the United States Supreme Court said:

> "State regulation, based on the police power, which does not discriminate against interstate commerce or operate to disrupt its required uniformity, may constitutionally stand. (Citations)."

Obviously, the Huron case was decided primarily on the basis of the facts of the case and on an analysis of the facts on a preemption rationale.

For our purposes here, we must consider the need for uniformity in registration for practitioners and balance the right of the state to control licensing standards for all practitioners with the need for uniformity in administering controls in drug trafficking. The following, from 21 U.S.C.A., § 801, we consider pertinent:

> "(3) A major portion of the traffic in controlled substances flows through interstate and foreign commerce. Incidents of the traffic which are not an integral part of the interstate or foreign flow, such as manufacture, local distribution, and possession, nonetheless have a

substantial and direct effect upon interstate commerce because—

"(A) after manufacture, many controlled substances are transported in interstate commerce,

"(B) controlled substances distributed locally usually have been transported in interstate commerce immediately before their distribution, and

"(C) controlled substances possessed commonly flow through interstate commerce immediately prior to such possession.

"(4) Local distribution and possession of controlled substances contribute to swelling the interstate traffic in such substances.

"(5) Controlled substances manufactured and distributed intrastate cannot be differentiated from controlled substances manufactured and distributed interstate. Thus, it is not feasible to distinguish, in terms of controls, between controlled substances manufactured and distributed interstate and controlled substances manufactured and distributed intrastate.

"(6) Federal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic."

The need for national registration was anticipated by Congress, although it permitted the mechanics of registration to be adopted or at least supplemented by the several states. The federal authority issues licenses to dispense to accomplish the purposes of federal legislation for the control of drug abuse, and has therefore acted definitively with respect to the interstate prescriber of controlled substances. See 21 U.S.C.A., § 822. Such an interest clearly outweighs any local interest that Iowa might have in allowing only practitioners registered in this state to prescribe here, and for pharmacists in this state to fill prescriptions emanating from out-of-state.

 V. On the basis of all of the foregoing, we must recognize the constitutional infirmities which would result from adopting plaintiff's construction of the Iowa Act. In order to avoid such problems, we therefore limit the application of sections 204.308 and 204.101(22), The Code, 1973, to practitioners registered in Iowa. We must therefore affirm the trial court in its ruling that practitioners registered under the Federal Controlled Substances Act, although not registered in Iowa, and not resident in this state, are governed solely by the federal Act, and that prescriptions emanating from out-of-state may be filled by duly authorized Iowa pharmacies.

We therefore affirm the trial court.

Affirmed.